**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RESTORATION 1 FRANCHISE HOLDING, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:** |
| **COAST 2 COAST RESTORATION LLC; ROBERT A. LEE, JR. ; AND ANTHONY ACETO,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Restoration 1 Franchise Holding, LLC, by its attorneys, and for its Complaint against Coast 2 Coast Restoration LLC, Robert A. Lee, Jr., and Anthony Aceto, states as follows:

## INTRODUCTION

1.      Restoration 1 Franchise Holding, LLC is the national franchisor of the system of franchised Restaurant 1®-brand businesses providing residential and commercial water, fire, smoke, and mold restoration services throughout the country. Defendants are the former franchisee and personal guarantors of five formerly franchised Restoration 1 businesses, each located in New York. Restoration 1 Franchise Holding, LLC recently terminated the franchise agreements under which defendants operated those businesses based on defendants' material breaches of their franchise agreements.

2.      Despite termination of the agreements, defendants refuse to comply with their post-termination obligations and continue to operate their formerly franchised businesses as authorized Restoration 1®-brand businesses when they are not.

3.      Restoration 1 Franchise Holding, LLC brings this lawsuit to (i) enjoin defendants from further infringing on Restoration 1's protected trademarks and trade name and unfairly competing with Restoration 1, (ii) enforce the post-termination provisions of the franchise agreements, including the obligations not to compete, (iii) and recover contractual damages owed under the franchise agreements and their respective personal guarantees and statutory damages owed in connection with defendants' violation of the Lanham Act.

## PARTIES

4.      Plaintiff Restoration 1 Franchise Holding, LLC ("Restoration 1") is a Delaware limited liability company with its principal place of business in Dallas, Texas.

5.      Defendant Coast 2 Coast Restoration LLC ("Coast 2 Coast") is a New York limited liability company with its principal place of business in Bellport, New York. Coast 2 Coast's members are RLee Family Holdings LLC and Aceto Family Holdings LLC, both also New York limited liability companies.

6.      Defendant Robert A. Lee, Jr. ("Lee") is a New York citizen and resident. He owns 100 percent of RLee Family Holdings LLC.

7.      Defendant Anthony Aceto ("Aceto") is a New York citizen and resident. He owns 100 percent of Aceto Family Holdings LLC.

## JURISDICTION AND VENUE

8.      The Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338, and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, wherein all other claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

10.     Jurisdiction and venue are also proper in this judicial district because defendants expressly agreed in writing in the franchise agreements and their personal guarantees that any action between the parties would be brought exclusively in this judicial district, and they irrevocably consented to, and waived any objection to, jurisdiction of and venue in this Court.

## RELEVANT FACTS.

11.     Restoration 1 is the national franchisor of the Restoration 1®-brand of franchised restoration businesses operating throughout the country. These restoration businesses provide residential and commercial water, fire, smoke, and mold restoration, and reconstruction services with additional services such as biohazard treatment, disinfecting, cleaning, carpet cleaning, drying, and repair of damaged structural areas, restoration after disasters, pack-out services, content processing, cleaning, and restoration, and general contracting.

12.     Restoration 1 grants franchises to qualified persons to establish and operate Restoration 1®-brand businesses under written franchise agreements with Restoration 1, together with a limited license to use certain of Restoration 1's trademarks in connection therewith.

13.     Under the franchise agreements, franchisees also receive access to Restoration 1's proprietary system for the development and operation of franchised restoration businesses, including standards and procedures for efficient business operations; procedures and strategies for marking, advertising, and promotion; customer service and development techniques; other strategies and techniques; and other trade secrets and confidential information.

## The Restoration 1® Name and Marks

14.     To identify the source, origin, and sponsorship of Restoration 1's products and services, and to distinguish those products and serves offered and sold by others, Restoration 1 and its authorized franchisees have extensively used certain trade names, trademarks, and service marks, including among others "Restoration 1®" (the "Restoration 1 Marks"), in connection with the operation of authorized Restoration 1®-brand businesses.

15.     Restoration 1 owns the Restoration 1 Marks and licenses them to authorized Restoration 1 franchisees for use solely in connection with their operation of Restoration 1®-brand businesses pursuant to written franchise agreements with Restoration 1.

16.     The Restoration 1 Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registration of the Restoration 1 Marks continues in full force and effect.

17.     Restoration 1 has given notice to the public of the registration of the Restoration 1 Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that all users of the Restoration 1 Marks have been authorized by written license to do so.

18.     Restoration 1 and its authorized franchisees have continuously used the Restoration 1 Marks in interstate commerce in connection with the operation of Restoration 1®-brand businesses and the promotion, offer, and sale of the products and services they offer throughout the United States since the date of their registration.

19.     Restoration 1 and its authorized franchisees have extensively advertised and promoted the Restoration 1 Marks and the products and services offered in Restoration 1®-brand businesses and otherwise in association with those marks throughout the United States and through various media.  As a result of such efforts and the substantial sums spent in connection therewith,

the products and services offered at Restoration 1®-brand businesses under the Restoration 1 Marks have been met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

### Defendants' Franchise Agreements

20.     Effective July 1, 2019, defendant Coast 2 Coast, as franchisee, and Restoration 1's predecessor-in-interest (also named Restoration 1 Holdings, LLC), as franchisor, entered into four separate written franchise agreements under which Restoration 1 granted Coast 2 Coast the right to own and operate four franchised Restoration 1®-brand businesses in, respectively, East End, Long Island, Nassau, and Queens, New York for an initial ten-year term.

21.     Effective October 30, 2019, Coast 2 Coast, as franchisee, and Restoration 1's predecessor-in-interest, as franchisor, entered into a fifth written franchise agreement under which Restoration 1 granted Coast 2 Coast the right to own and operate a fifth franchised Restoration 1®-brand businesses in Manhattan, New York (referred to collectively with the other four agreements as the "Franchise Agreements") for an initial ten-year term.

22.     In connection with the execution of each Franchise Agreement, Coast to Coast's only member at the time, defendant Lee, personally guaranteed Coast 2 Coast's obligations under each Franchise Agreement, and agreed to be personally bound by, and personally liable for the breach of, each and every provision of each Franchise Agreement, including the noncompetition covenant discussed below.

23.     Under an April 2020 corporate restructuring, Restoration 1's predecessor merged with the newly formed Restoration 1 to become the current franchisor of the franchise system and plaintiff in this action.

24.     Effective January 20, 2022, the parties executed an amendment that acknowledged Restoration 1 as successor-in-interest to the Franchise Agreements and modified defendants' protected territories under certain agreements.

25.     Effective March 14, 2022, Restoration 1 granted defendants' request to modify Coast 2 Coast's ownership structure to add defendant Aceto. In connection with that change of ownership, defendants Lee and Aceto signed personal guarantees for each of the Franchise Agreements.

26.     In exchange for, among other things, the limited license to use Restoration 1's proprietary system and operate under the Restoration 1 Marks, defendants agreed to a number of obligations.

27.     Relevant to this matter, defendants agreed to provide monthly reports of their collected gross revenue and pay Restoration 1 a continuing royalty fee of seven percent of that collected gross revenue for the full terms of the Franchise Agreements. Defendants also agreed to pay a monthly technology fee at the same time as the royalty fee. Payments not received when due are subject to a one and one half percent late fee per month from the date payment was due to the date payment is received.

28.     Defendants further agreed to establish a franchised business office at an approved location and operate each franchised business within the protected territory assigned to them under each agreement. The Franchise Agreements expressly prohibited defendants from marketing outside their assigned territories (except under approved cooperative advertisements), soliciting orders from customers outside their assigned territories, or relocating their franchised business office without prior written approval from Restoration 1.

29.     Defendants agreed that these territorial restrictions were integral to the Restoration 1 franchise system and that breaches of these restrictions would cause irreparable harm to other franchisees, Restoration 1's relationship with other franchisees, and the integrity of the franchise system. As a result, the parties agreed that a reasonable estimate of just compensation owed in the event defendants breached the territorial restrictions would be for defendants to pay Restoration 1 $5,000 per incident as liquidated damages.

30.     Under the Franchise Agreements, Restoration 1 reserved the right to terminate the agreements, effective immediately upon written termination notice, if defendants failed to pay amounts due under the agreements within five days after delivery of written notice of default.

31.     The Franchise Agreements also permit Restoration 1 to terminate the agreements effective upon notice if other categories of defaults are not cured within 30 days after delivery of written notice of default.

32.     The Franchise Agreements further permit Restoration 1 to terminate them effective upon notice, and without any opportunity to cure, if defendants fail on two or more separate occasions within any twelve-month period to submit reports or other information or supporting records when due or pay any amounts owed when due.

33.     Upon the termination of any of the Franchise Agreements, defendants agreed to immediately comply with certain post-termination obligations, including without limitation:

      a.     To pay Restoration 1 and its affiliates all sums due and owing;

      b.     To cease operating the franchised business and to cease using Restoration 1's confidential information, procedures, and techniques associated with the system;

    c.      To cease use of the Restoration 1 Marks and all other marks and distinctive slogans, symbols, logos, advertising materials, stationary, forms, and other items associated with the system; and

    d.      To immediately cease representing or holding itself out, directly or indirectly, as a Restoration 1 business or a current or former franchisee and assign all of its email addresses, websites, telephone listings, and numbers associated with the Marks to Restoration 1.

34.     In addition, to induce Restoration 1 to enter into the Franchise Agreements and provide defendants with access to its trade secrets and confidential system, use of the Restoration 1 Marks, and specialized training in operating the businesses, defendants agreed not to compete with Restoration 1 for a continuous period of two years from the later of the effective date of termination or the date on which they begin compliance, within twenty-five miles of their formerly protected territories or within the territory of any other Restoration 1 business.

35.     In the event of termination, the parties further agreed to two separate payments owed to Restoration 1 as compensation in connection with the termination. First, to compensate Restoration 1 for the royalties owed on the franchised businesses' completed, but not yet collected, sales, the parties agreed that defendants would pay Restoration 1 a final payment of 70 percent of each franchised business's accounts receivable balance multiplied by seven percent.

36.     The parties further agreed that, in addition to the above remedies, if the Franchise Agreements were terminated as a result of defendants' material default, such termination would result in damages for the loss of the benefit that Restoration 1 bargained for—which damage includes lost future fees to Restoration 1 and increased costs to Restoration 1 to develop or refranchise the markets in which the businesses were located—and irreparable damage to the

integrity of the franchise system, including harm to the goodwill associated with Restoration 1's system and trademarks. To reasonably compensate Restoration 1 for these damages, defendants agreed under each Franchise Agreement to pay Restoration 1 liquidated damages equal to nine percent of defendants' average collected gross revenue for the twelve months before termination multiplied by 24 months.

37.     The Franchise Agreements require that defendants pay Restoration 1 all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Restoration 1 in connection with obtaining relief for any breach of the Franchise Agreements.

### Defendants' Default and Termination of the Agreement

38.     Restoration 1 recently discovered that, despite these obligations, defendants had been marketing their business, soliciting customers, and performing unauthorized services outside their protected territories.

39.     On November 7, 2022, Restoration 1 sent defendants a written default notice (the "First Default Notice") under each Franchise Agreement regarding their unlawful marketing outside their protected territories and within other franchisees' territories. Restoration 1 demanded that defendants cure the above-referenced defaults by ceasing all extra-territorial marketing activities within ten days to avoid incurring the $5,000 per incident liquidated damages payment and within 30 days to avoid termination of each Franchise Agreement.

40.     Defendants failed to cure the defaults under the First Default within the cure period afforded to them.

41.     In addition, defendants stopped reporting gross sales under the agreements, stopped paying royalties and technology fees owed under the agreements, and unlawfully relocated the franchised businesses' common business office to a location outside the assigned territory.

42.    On February 22, 2023, Restoration 1 emailed defendants another written default notice (the "Second Default Notice") identifying these additional defaults as well as defendants' failure to submit financial statements for 2021 and 2022 and taxes for 2021 (also requirements under the Franchise Agreements). The Second Default Notice demanded that defendants cure these defaults by:

    a.   Ceasing extra-territorial marketing activities within 30 days of delivery of the notice;

    b.   Submitting gross revenue reports for the months of November, December, and January within 30 days of delivery of the notice;

    c.   Paying past due amounts owed for the royalty and technology fee (including a one and one half percent late fee) for the months of November, December, and January within five days of delivery of the notice;

    d.   Submitting a request to relocate the franchised business office and receiving the requisite approval to relocate from Restoration 1 or moving the franchised business office back to the previously approved business office within 30 days;

    e.   Submitting all financial statements for the 2021 and 2022 calendar years and tax returns for 2021 within 30 days of the notice.

43.    Restoration 1 advised defendants that failure to cure any of these defaults within the afforded cure periods may result in termination of the Franchise Agreements.

44.    On February 28, 2023, Restoration 1 re-sent the Second Default Notice and received oral confirmation from defendant Lee that he had received and opened the notice on that day.

45.     Although the Franchise Agreements' notice provisions deemed the Second Default Notice received the day after it was sent, Restoration waited another five days for defendants to cure the payment defaults under each Franchise Agreement.

46.     On March 6, 2023, Restoration 1 sent defendants a written notice terminating the Franchise Agreements effective as of the delivery of the notice for their failure to cure the payment defaults under the Second Default Notice within the cure period afforded to them ("Termination Notice").

47.     In the Termination Notice, Restoration 1 reminded defendants of their post-termination obligations under the Franchise Agreements, including, among others, ceasing to operate the franchised businesses or to identify themselves as present or former Restoration 1 franchisees, ceasing use of Restoration 1 Marks, cancelling any assumed names relating to the use of the Restoration 1 Marks and providing evidence of the same, paying all outstanding amounts owed, returning all confidential information, including all copies of Restoration 1's manuals, and complying with their post-termination covenants, including the noncompetition covenants.

### Defendants' Violations of the Post-Termination Obligations under the Franchise Agreements

48.     Despite termination of the Franchise Agreements, defendants have failed and refused to comply with their post-termination obligations.

49.     Defendants continue to operate the businesses under the Restoration 1 Marks and other slogans, symbols, logos, advertising materials, and other items associated with Restoration 1's proprietary and confidential system without a license to do so.

50.     Defendants continue to operate the businesses using Restoration 1's proprietary and confidential system without a license to do so.

51.     Defendants refuse to de-identify the businesses as being, or having been, associated with Restoration 1 or the Restoration 1® brand, or to cancel all assumed names relating to the use of the Restoration 1 Marks, or to return confidential information, or to assign their email addresses, telephone listings and numbers to Restoration 1.

52.     Defendants have not paid Restoration 1and its affiliates any of the sums due and owing.

53.     And defendants refuse to comply with their post-termination noncompetition covenant by operating and marketing the same businesses in the same areas as their formerly franchised businesses as well as the territories of current Restoration 1 franchisees.

54.     Put simply, despite termination of the Franchise Agreements, defendants continue to operate the businesses as authorized Restoration 1®-brand businesses, thereby falsely holding their businesses out to the public as authorized and authentic Restoration 1®-brand businesses when they are not.

55.     Restoration 1at all times fully performed all of its obligations under the Franchise Agreements.

### COUNT I
### TRADEMARK INFRINGEMENT

56.     Restoration 1incorporates the above paragraphs as if fully stated in this paragraph.

57.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Restoration 1 Marks and have caused and are likely to continue to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58.     Defendants' misconduct has been, and continues to be, knowing and willful.

59.    As a direct and proximate result of defendants' infringement, Restoration 1 has suffered and, unless defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including without limitation, diminution in the value of the Restoration 1 Marks, diminution in the value of its goodwill and reputation, and incalculable lost revenues and profits.

60.    Restoration 1 has no adequate remedy at law because the Restoration 1 Marks are unique and represent to the public Restoration 1's identity, reputation, and goodwill, such that damages alone cannot fully compensate Restoration 1 for defendants' misconduct.

61.    This continuing injury to Restoration 1's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Restoration 1 Marks, and to ameliorate and mitigate Restoration 1's injuries.

## COUNT II
## UNFAIR COMPETITION

62.    Restoration 1 incorporates the above paragraphs as if fully stated in this paragraph.

63.    Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the services being offered and sold by defendants, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.    Defendants' misconduct has been, and continues to be, knowing and willful.

65.    As a direct and proximate result of defendants' infringement, Restoration 1 has suffered and, unless defendants' infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of its trade

dress, diminution in the value of and damage to its goodwill and reputation, and incalculable lost revenues and profits.

66.     Restoration 1 has no adequate remedy at law because the Restoration 1 Marks are unique and represent to the public Restoration 1's identity, reputation, and goodwill, such that damages alone cannot fully compensate Restoration 1 for defendants' misconduct.

67.     This continuing injury to Restoration 1's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, and to ameliorate and mitigate Restoration 1's injuries.

**COUNT III**
**BREACH OF CONTRACT**

68.     Restoration 1 incorporates the above paragraphs as if fully stated in this paragraph.

69.     Defendants' failure to operate their franchised businesses in accordance with the Franchise Agreements' terms constitute material breaches of the Franchise Agreements and their respective guarantees.

70.     As a direct and proximate result of defendants' breaches before termination of the agreements and the resulting termination of the Franchise Agreements, Restoration 1 has sustained damages in an amount to be proved at trial.

71.     Defendants' failure to comply with the post-termination provisions of their Franchise Agreements relating to amounts owed also constitute material breaches of the Franchise Agreements and their respective guarantees, as a direct and proximate result of which Restoration 1 has sustained damages in an amount to be proved at trial.

72.     Defendants' failure and refusal to comply with their other post-termination obligations under the Franchise Agreements, including without limitation their noncompetition covenant, their obligations to de-identify the businesses, and to cease all use of the Restoration 1

Marks, also constitute material breaches of the Franchise Agreements and their personal guarantees.

73.     As a direct and proximate result of these continuing breaches, Restoration 1 has suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' formerly franchised businesses, lost profits, diminution in the value of its proprietary and confidential information, and loss of competitive advantage.

74.     Restoration 1 has been and will be irreparably harmed by defendants' failure to comply with their noncompetition covenants, their failure to de-identify the businesses, and their failure to cease all use of the Restoration 1 Marks, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate Restoration 1 for the continuing damage to the value of Restoration 1's goodwill and reputation, its proprietary and confidential information, its system stability, and its inability to refranchise the territory serviced by defendants' formerly franchised businesses, all of which are caused by defendants' continuing material breaches.

75.     Absent injunctive relief enjoining their misconduct and ordering specific performance of their non-monetary post-termination obligations, defendants' material breaches will continue to cause Restoration 1 irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully pray for the following relief against defendants, jointly and severally:

A.   A preliminary and permanent injunction enjoining defendants, and each of them, and their respective agents, servants and employees, and all persons in active concert or participation with them from:

1.   Using any of the Restoration 1 Marks, or any trademark, service mark, logo, trade name, or elements of design and décor that is confusingly similar to the Restoration 1 Marks;

2.   Otherwise infringing the Restoration 1 Marks using any similar designation, alone or in combination with any other components;

3.   Passing off any products or services as those of authorized Restoration 1 franchisees or as genuine Restoration 1 products or services;

4.   Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

5.   Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with Restoration 1, or with any of its products or services; and

6.   Unfairly competing with Restoration 1, in any manner.

B.   A preliminary and permanent injunction directing defendants, and each of them, and their respective agents, servants and employees, and all persons in active concert or participation with them, to fully perform their post-termination obligations, including, without limitation, their obligations under their noncompetition covenants;

C.   An order that defendants account and pay over to Restoration 1 all gains, profits and advantages derived by them as a result of their infringement of the Restoration

1 Marks and unfair competition, to the full extent provided for by Section 35 of the
Lanham Act, 15 U.S.C. § 1117;

D.    An order that defendants pay to Restoration 1 such damages as it has sustained by
reason of defendants' trademark infringement and unfair competition, and that,
because of the willful nature of such infringement, the Court enter judgment for
Restoration 1 in an amount equal to three times the amount of such damages,
pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117;

E.    An award of damages to Restoration 1 for defendants' breach of the Franchise
Agreements and their respective guarantees in an amount to be proved at trial;

F.    An award of the costs and expenses, including reasonable attorneys' fees, incurred
by Restoration 1 in connection with this action; and

G.    Such other and further relief as the Court deems just and proper.

Dated:  March 13, 2023                Respectfully submitted,

/s/ Aaron-Michael Sapp
Aaron-Michael Sapp (*pro hac forthcoming*)
Max H. DeLeon (*pro hac forthcoming*)
CHENG COHEN LLC
363 West Erie Street, Suite 500
Chicago, Illinois 60654
asapp@chengcohen.com
max.deleon@chengcohen.com

-and-

/s/ J. David Apple
J. David Apple
APPLE & FINK, LLP
735 Plaza Blvd., Suite 200
Coppell, Texas 75019
(972) 315-1900
jdapple@applefinklaw.com